**BROWN KWON & LAM, LLP**
William Brown, Esq. (WB 2108)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| QIANG "JAY" HUI,<br><br>Plaintiff,<br><br>- against -<br><br>FEDERAL RESERVE BANK OF NEW YORK,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff QIANG "JAY" HUI ("Plaintiff"), upon personal knowledge as to himself, and upon information and belief as to other matters, by and through his undersigned attorneys, hereby files this Complaint against Defendant FEDERAL RESERVE BANK OF NEW YORK ("FRBNY" or "Defendant") and alleges as follows:

**INTRODUCTION**

1. Plaintiff alleges, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(g) ("Title VII"), the New York State Human Rights Law, New York State Executive Law, Article 15 §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that Defendants subjected him to a hostile work environment and terminated his on the basis of race, ethnicity and national origin. Plaintiff seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and () attorneys' fees and costs.

1

**ADMINISTRATIVE PREREQUISITES**

2.      Plaintiff has exhausted Title VII's administrative requirement of filing a charge with the Equal Employment Opportunity Commission ("EEOC"). On June 12, 2023, Plaintiff filed a Charge of Discrimination with the EEOC. On June 10, 2024, the EEOC issued Plaintiff's Notice of Right to Sue. Therefore, this lawsuit was filed within the ninety (90) day period of the receipt of Plaintiff's Notice of Right to Sue.

3.      Pursuant to NYCHRL, Plaintiff will serve a copy of the Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel within ten (10) days of the filing.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as they arise out of the same events and circumstances that give rise to Plaintiff's federal claims.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred in this District.

**PARTIES**

*Plaintiff*

***QIANG "JAY" HUI***

7.      Plaintiff QIANG "JAY" HUI resides in Bronx County, New York.

8.      Plaintiff QIANG "JAY" HUI was a covered employee within the meaning of Title VII, NYSHRL and NYCHRL.

*<u>Defendants</u>*

### FEDERAL RESERVE BANK OF NEW YORK.

9. Defendant FEDERAL RESERVE BANK OF NEW YORK. ("FRBNY") is one of the twelve (12) Federal Reserve Banks of The United States. It is located at 33 Liberty Street, New York, NY. It is responsible for the Second District of the Federal Reserve System, which encompasses New York State, the twelve (12) northern counties of New Jersey, Fairfield County in Connecticut, Puerto Rico and the U.S. Virgin Islands. Working within the Federal System, the New York Federal Reserve Bank implements monetary policy, supervises and regulates financial institutions, and helps maintain the nation's payment systems.

10. At all relevant times, Defendant FRBNY employed Plaintiff.

11. At all relevant times, Defendant was and continues to be an employer within the meaning of Title VII, NYSHRL, and the NYCHRL.

12. At all relevant times, Defendant FRBNY maintained control, oversight, and direction over Plaintiff, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

## STATEMENT OF FACTS

13. Plaintiff is ethnically Han Chinese, and was born in the People's Republic of China. Plaintiff first came to the United States in 1990 when he was 14 years old and has been a proud United States citizen since 1995.

14. Plaintiff was initially hired by FRBNY in 2014 as an Institutional Supervision Manager A. Before that Plaintiff worked in various financial institutions in a risk management role, including, but not limited to, AXA Group, National Life Group, Wachovia Bank and Merrill Lynch. In each of his prior positions, Plaintiff was very highly regarded and received universally positive feedback.

15. Throughout his employment with FRBNY, Plaintiff worked in the "Supervision Group." Plaintiff's primary duty was to lead and participate in risk examinations/inspections in order to promote the overall safety and soundness of supervised institutions.

16. During the course of his employment with FRBNY, Plaintiff demonstrated himself to be a valued employee, earning the trust and confidence of his supervisors and colleagues. Plaintiff thus received increased responsibilities, including leading many successful assignments as the Examiner-in-Charge. Plaintiff was further given raises and bonuses each year during the course of his long tenure with FRBNY. Furthermore, just days before his abrupt termination in May 2023, his direct supervisor recommended Plaintiff for a cross-departmental leadership position.

17. On or about November 2022, FRB shipped a new HP Dragonfly computer to Plaintiff's home to replace a nine-year old HP Elitebook laptop that Plaintiff had been using. On or about December 21, 2022, on a day Plaintiff was scheduled to work from home, the new HP Dragonfly laptop started hissing and smoking and then caught fire shortly after Plaintiff turned it on. Plaintiff urgently extinguished the fire and immediately reported the incident to FRBNY's IT department as well as his managers. Plaintiff additionally sent photos of the damaged computer taken with the iPhone issued by Defendant, and provided written responses to follow-up questions from the IT department.

18. In response, FRBNY instructed Plaintiff to return the laptop for an analysis. FRBNY claimed that the analysis was necessary to evaluate if other employees who used the same laptop model were at risk of their laptops combusting.

19. Plaintiff returned the HP Dragonfly laptop as instructed, and also voluntarily returned his old HP Elitebook laptop, which was issued nine years ago and was supposed to be

replaced by the HP Dragonfly laptop. The return of the older Elitebook laptop was unrelated to the HP Dragonfly laptop which had caught fire, and was returned entirely on his own initiative. Plaintiff voluntarily returned the Elitebook simply because he no longer had use for it.

20. Upon information and belief, the HP Dragonfly was sent to the manufacturer for an analysis into the cause of the fire. According to Defendant, HP concluded from their investigation that the fire was caused by an object puncturing the battery. However, an investigation performed by FRBNY's IT Department differed from HP's findings.

21. Nonetheless, Robert Amenta, Associate Managing Director of the Financial Intelligence and Investigations Unit at FRBNY used the HP analysis and the condition of the nine-year old Elitebook as pretext to initiate an investigation into Mr. Hui. Mr. Hui's managers were not informed of Mr. Amenta's investigation.

22. The focus of Mr. Amenta's investigation turned, almost immediately, to Plaintiff's race and national origin. Specifically, throughout his investigation, Mr. Amenta's questioning was focused on a completely unsupported supposition that Plaintiff was somehow spying and/or acting as an agent for the Chinese government.

23. On May 2, 2023, Plaintiff was told by Mr. Amenta that he is the subject of an "investigation" and must attend an in-person meeting as soon as possible. On May 3, 2023, Mr. Hui was interviewed by Mr. Amenta, also present was Danielle Levitt, a People Relations Advisor. The meeting quickly turned into an interrogation, as Mr. Amenta aggressively demanded answers to questions regarding Mr. Hui's connections to China, the Chinese government, or if he had been approached by Chinese government agents. Mr. Amenta also asked about Mr. Hui's travel history and financial health, if he "provided consulting services," and if he could be "influenced." Mr. Amenta further asked if any of Mr. Hui's family members had any connections with the PRC, with

PRC Agents, or had discussions with any possible agents about Mr. Hui's job. It goes without saying, that such questions would not be asked of a non-Chinese employee.

24. Furthermore, the questions asked bore no relationship to the original theory, that Plaintiff had for some reason intentionally damaged his laptop. The entire premise of the investigation was completely nonsensical. The fire caused localized damage to the computer's battery, which does not affect its hard drive or memory, Plaintiff then reported the damage to FRBNY's IT department, and returned it for a forensic analysis. These actions are not at all consistent with intentional wrongdoing, and Mr. Amenta only assumed as such due to Plaintiff's protected status. Additionally, at no time did Mr. Amenta cite any evidence that Mr. Hui had acted in any way that breached FRBNY's extensive information security policies or protocols.

25. Rather, Mr. Amenta demonstrated discriminatory animus by questioning Plaintiff's loyalty to FRBNY and to the United States, based solely on his national origin. During his investigation, Mr. Amenta immediately jumped to wild conclusions, such as accusing Plaintiff of also intentionally damaging his older Elitebook laptop that Plaintiff voluntarily submitted. The superficial cosmetic damage Mr. Amenta focused on occurred over a period of many years and did not affect the performance of the computer. Rather, the laptop was fully functional when returned, and any cosmetic damage was the result of nearly a decade of wear and tear from heavy daily usage and frequent business travel. Mr. Amenta dismissed this explanation and speculated that the cosmetic marks on the laptop case were, in his view, consistent with damage caused by a "screwdriver". Mr. Amenta demanded that Mr. Hui admit that he tampered with the laptop; even though Mr. Hui voluntarily turned the computer in and no evidence of any wrong doing associated with that laptop was ever discovered.

26. The inferences made by Mr. Amenta during the interview made Plaintiff feel extremely apprehensive. Mr. Amenta furthermore used high pressure tactics such as repeatedly stating "you need to comply with the investigation!" and "you need to tell the truth!" When Mr. Amenta was not satisfied with a response he repeated the question with increasing volume and forcefulness and added phrases such as "again I am going to ask you!" followed by "I will ask you again!: Despite this, at all times, Plaintiff conducted himself in a highly professional manner, and answered all of Mr. Amenta's questions as candidly and calmly as possible, given the circumstances.

27. Despite the complete lack of any evidence of wrongdoing, Mr. Amenta deemed Mr. Hui's responses to be dishonest based on subjective readings of body language and demeanor that are also discriminatory as they are founded in cultural biases and stereotypes. For example, Mr. Amenta noted that Plaintiff failed to maintain eye contact when answering questions, and used this as one of the bases for determining that Plaintiff acted untruthfully.

28. When Mr. Hui voiced his concerns that the insinuation that he was acting as a Chinese foreign agent was discriminatory, Mr. Amenta immediately retaliated by terminating the meeting, confiscating Mr. Hui's work laptop, work phone, access card, and showing Mr. Hui to the door.

29. On May 15, 2023, even though no actual evidence of impropriety was ever found, Plaintiff's employment with the FRBNY was terminated based solely on the recommendation of Mr. Amenta. In other words, the basis for Plaintiff's termination was Mr. Amenta's subjective belief that Plaintiff was "not credible" and that Mr. Hui was "combative and uncooperative" during an interrogation where he was essentially being accused of espionage. Plaintiff was prejudiced

from the very beginning of the "investigation" as Mr. Amenta had formed the belief that due to Plaintiff's national origin, he should be treated with high level of suspicison.

30. The basis for Mr. Hui's termination is entirely inconsistent with his nine-year record with FRBNY. Plaintiff had clearly earned the trust of his colleagues and supervisors, who over the years had expanded Plaintiff's responsibilities, tasked him with leading multiple Federal Reserve Bank assignments as an Examiner-in-Charge, and entrusted him to interact with multiple international regulatory agencies. In fact, shortly before his termination, Plaintiff earned a recognition award for collaboration and communication and was recommended to lead a cross-departmental trading risk project.

31. Defendant therefore violated Plaintiff's statutory rights by subjecting him to a hostile work environment and then terminating his employment in on the basis of his race, ethnicity and national origin.

32. As a direct result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered from severe emotional distress, including but not limited to depression, anxiety, humiliation, stress-induced insomnia, changes in his appetite, and difficulty maintaining personal and professional relationships.

**STATEMENT OF CLAIMS**

**FIRST CAUSE OF ACTION**
**Discrimination and Retaliation in Violation of Title VII**

33. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

34. Plaintiff is an employee and protected person within the meaning of Title VII and Defendant is a covered employer under Title VII.

35. Defendant violated Plaintiff's statutorily protected rights under Title VII by engaging in discriminatory and retaliatory employment practices.

36. Defendant discriminated against Plaintiff in violation of Title VII by subjecting Plaintiff to disparate treatment and terminating his employment on the basis of his race, ethnicity and national origin and in retaliation for complaining of the above discrimination. Defendant fostered, condoned, accepted, ratified and/or otherwise failed to prevent or to remedy discriminatory work conditions, in violation of Title VII.

37. As a direct and proximate result of Merkle's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

38. As a direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

39. Defendant's unlawful discriminatory and retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under Title VII, for which he is entitled to an award of punitive damages.

40. Due to Defendant's violations of Title VII, namely, employment discrimination on the basis of his race, ethnicity and national origin, and retaliation Plaintiff is entitled to recover from Defendant: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs of bringing this action.

## SECOND CAUSE OF ACTION
**Discrimination and Retaliation in Violation of the New York State Human Rights Law**

41. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

42. Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendant is a covered employer under the NYSHRL.

43. Defendant violated Plaintiff's statutorily protected rights under the NYSHRL by engaging in discriminatory and retaliatory employment practices.

44. Defendant discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiff to disparate treatment and terminating his employment on the basis of his race, ethnicity and national origin and in retaliation for complaining of the above discrimination. Defendant fostered, condoned, accepted, ratified and/or otherwise failed to prevent or to remedy discriminatory and retaliatory work conditions.

45. As a direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

46. As a direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

47. Defendant's unlawful discriminatory and retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYSHRL, for which he is entitled to an award of punitive damages.

48. Due to Defendant's violations of the NYSHRL, namely, employment discrimination on the basis of his race, national origin and ethnicity, and retaliation Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs of bringing this action.

### THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF
**Discrimination and Retaliation in Violation of the New York City Human Rights Law**

49. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

50. Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendant is a covered employer under the NYCHRL.

51. Defendant violated Plaintiff's statutorily protected rights under the NYCHRL by engaging in discriminatory and retaliatory employment practices.

52. Defendant discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to disparate treatment and terminating his employment on the basis of his race, ethnicity and national origin and in retaliation for complaining of the above discrimination. Defendant fostered, condoned, accepted, ratified and/or otherwise failed to prevent or to remedy discriminatory and hostile work conditions.

53. As a direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

54. As a direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

55. Defendant's unlawful discriminatory and retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYCHRL, for which he is entitled to an award of punitive damages.

56. Due to Defendants' violations of the NYCHRL, namely, employment discrimination on the basis of his race, ethnicity and national origin, and retaliation Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs of bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a. An award to Plaintiff awarding relief for Defendant's discriminatory and retaliatory conduct, including, but not limited to economic, compensatory and punitive damages;

b. Pre-judgment and post-judgment interest;

c. Reasonable attorneys' fees and costs of this action;

d. A declaratory judgment that the practices complained of herein are unlawful under Title VII, NYSHRL and NYCHRL;

e. An injunction against FRBNY and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

**f.** Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: New York, New York
September 6, 2024

                Respectfully submitted,

                **BROWN KWON & LAM, LLP**

By:   */s/ William Brown*

        William Brown, Esq.
        521 Fifth Avenue, 17th Floor
        New York, NY 10175
        Tel.: (212) 295-5828
        Fax: (718) 795-1642
        wbrown@bkllawyers.com
        *Attorneys for Plaintiff*

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

# DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/10/2024

**To:** Mr. Qiang Hui
2223 Bouck Ave
BRONX, NY 10469

Charge No: 520-2023-05284

EEOC Representative and email:  PAUL HOLCHAK
Investigator
paul.holchak@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Yaw Gyebi, Jr.
06/10/2024

Yaw Gyebi, Jr.
District Director